FILED

AUG 2 2019

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.    CC-18-1239-FLKu |
| AGNETA DOBOS, | Bk. No.    2:13-bk-35978-BR |
| Debtor. | Adv. No.    2:18-ap-01001-BR |
| PEOPLE'S BAIL BONDS; HARRY KASSABIAN, | |
| Appellants, | |
| v. | **OPINION** |
| AGNETA DOBOS, | |
| Appellee. | |

Argued and Submitted on June 20, 2019
at Pasadena, California

Filed – August 2, 2019

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Barry Russell, Bankruptcy Judge, Presiding

———

Appearances:    Michael D. Kwasigroch argued for appellants People's Bail Bonds and Harry Kassabian; Andrew E. Smyth argued for appellee Agneta Dobos.

---

Before:  FARIS, LAFFERTY, and KURTZ, Bankruptcy Judges.

FARIS, Bankruptcy Judge:

## INTRODUCTION

Creditors People's Bail Bonds and Harry Kassabian (collectively, "the bail bondsmen") appeal the bankruptcy court's order dismissing their adversary complaint against chapter 7[1] debtor Agneta Dobos as untimely. They argue that they had no notice of Ms. Dobos' bankruptcy petition or the avoidance of their judgment lien but timely filed their complaint as soon as they became aware of Ms. Dobos' bankruptcy case. They also contend that the bankruptcy court should have construed Ms. Dobos' motion to dismiss as a motion for summary judgment and considered further evidence.

We agree with Ms. Dobos that the bail bondsmen's judgment has expired, so they can no longer enforce the judgment. Therefore, the court was correct to dismiss their nondischargeability complaint, and we

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are the Federal Rules of Civil Procedure.

AFFIRM. We publish to explain the effect of bankruptcy law on the duration of a prebankruptcy judgment.

## FACTUAL BACKGROUND[2]

### A. Prepetition events

Sometime before 2007, Ms. Dobos was arrested, and the bail bondsmen posted a bond to secure her release from custody. Upon meeting Ms. Dobos, Mr. Kassabian realized that she was a "risk" and "immediately . . . revoked her bond and . . . took her back to jail." He stated that he refunded all of her money.

Ms. Dobos filed suit against the bail bondsmen in state court, which resulted in a $52,000 judgment for attorneys' fees in favor of the bail bondsmen on January 11, 2007.[3] The bail bondsmen recorded the judgment, which created a lien against Ms. Dobos' real property located in Tujunga, California.

---

[2] We exercise our discretion to review the bankruptcy court's docket, as appropriate. *See Woods & Erickson, LLP v. Leonard (In re AVI, Inc.)*, 389 B.R. 721, 725 n.2 (9th Cir. BAP 2008).

[3] The record on appeal does not include any documents (other than the judgment) from the 2007 litigation. Mr. Kassabian provided inconsistent explanations of the basis for the award. In one paragraph of a declaration, he testified that "the court granted attorneys fees to me based upon my written contract with Ms. Dobos." But in the very next paragraph, he testified that "I obtained a judgment against Mr. [sic] Dobos for approximately $52,000 based upon her malicious prosecution of her lawsuit against me, and the provision in my initial contract providing that any dispute would result in the prevailing party being awarded attorney Fees [sic]." Thus, we cannot tell if the court awarded attorneys' fees based on a contract theory or on some other basis.

**B. Ms. Dobos' chapter 7 petition**

Over six years later, on October 25, 2013, Ms. Dobos filed a chapter 7 petition. She scheduled as a secured debt the 2007 judgment debt owed to the bail bondsmen totaling $52,437.98. Her mailing matrix included the bail bondsmen's address stated on the 2007 abstract of judgment and the name and address of the attorney, Marshall E. Rosenbach, who had represented the bail bondsmen during the state court proceedings.

Ms. Dobos filed a motion to avoid the bail bondsmen's lien on her residence ("Motion to Avoid Lien"). She alleged that the residence was worth $250,000 and was subject to a $125,000 first lien in favor of the Los Angeles Housing Authority. She claimed a $175,000 homestead exemption. She sought avoidance of the bail bondsmen's lien under § 522(f).

Ms. Dobos served the Motion to Avoid Lien via certified mail on Mr. Rosenbach (as "Attorneys for Harry Kassabian") at his Beverly Hills, California address and on the bail bondsmen at the Northridge, California address that was listed on the 2007 abstract of judgment.

The bail bondsmen did not oppose the Motion to Avoid Lien.

The bankruptcy court entered an order ("Lien Avoidance Order") granting the motion. Ms. Dobos received her discharge on February 3, 2014, and the bankruptcy court closed her case.

Over a year later, on September 1, 2015, Mr. Kassabian filed a motion to reopen Ms. Dobos' bankruptcy case ("Motion to Reopen"). He claimed

4

that he was not served with the notice of the bankruptcy, the Motion to Avoid Lien, or the Lien Avoidance Order, because the addresses that Ms. Dobos used for him and Mr. Rosenbach, while accurate in 2007, were no longer correct nearly seven years later. He stated that he wanted to file an opposition to the Motion to Avoid Lien, a motion to set aside the Lien Avoidance Order, and a nondischargeability complaint. In the Motion to Reopen, Mr. Kassabian emphasized that the reopening "lacks independent legal significance and **determines nothing with respect to the merits of the case.**"

Inexplicably, Mr. Kassabian took no steps to prosecute the Motion to Reopen for more than two years. In January 2018, before the court reopened the case, the bail bondsmen filed their adversary complaint. A clerk's note on the docket sheet indicates that the clerk then told the bail bondsmen's counsel to obtain a hearing on the Motion to Reopen, and counsel did so.

Ms. Dobos did not respond to the Motion to Reopen or appear at the hearing on that motion. The bankruptcy court granted the Motion to Reopen on March 19, 2018.

## C.    The adversary proceeding

The adversary complaint, filed January 2, 2018, sought to declare the judgment debt nondischargeable under §§ 523(a)(2), (3)(B), and (6).

Mr. Kassabian attached his declaration to the adversary complaint.

5

He attested that he did not know that Ms. Dobos had filed a bankruptcy petition and did not receive notice of the Motion to Avoid Lien or Lien Avoidance Order. He stated "that the address and persons upon whom Ms. Dobos had her motion to remove the judgment lien served are or were not my address."

The complaint did not clearly lay out the bail bondsmen's claims. The key paragraph reads as follows:

> Not only was [Ms. Dobos] to pay for [the bail bondsmen's] services, she was to grant a lien on her house in favor of [the bail bondsmen], but after judgment [the bail bondsmen] also had a judgment lien. [Ms. Dobos] contracted to grant a lien and implied therein is the duty to safeguard the "res" which she has not, and obtained the agreement to get the bail bond by fraud by agreeing to all of the terms verbally, with no intent to perform, and manipulating the circumstances to attempt to get out of the contract. [Ms. Dobos] has committed malicious prosecution against [the bail bondsmen]. The duty to hold the property and grant the lien for payment to [the bail bondsmen] was a fiduciary duty.

Ms. Dobos filed an answer generally denying the principal allegations. She asserted a single affirmative defense: "This Complaint is barred by the applicable statute of limits [sic] 11 U S C 546 (a)."[4]

Three months later, Ms. Dobos filed a motion to dismiss the adversary complaint ("Motion to Dismiss"). She made three arguments.

---

[4] Section 546(a) sets a time limit for filing complaints under some of the avoiding powers. It has nothing to do with any of the claims that the bail bondsmen asserted.

First, she argued that she had properly scheduled the judgment debt and that directing the bankruptcy notice and the Motion to Avoid Lien to the bail bondsmen's 2007 address and their state court attorney was proper.

Second, she contended that the adversary proceeding was untimely under Rule 4007(c), which requires creditors to file complaints to determine dischargeability of certain debts within sixty days after the first § 341(a) meeting of creditors.

Third, Ms. Dobos argued that the 2007 judgment was no longer enforceable, because under California Code of Civil Procedure section 683.020, it expired ten years after entry. Ms. Dobos argued that the judgment would have expired on January 11, 2017, but, under § 108(c), it was extended 101 days during the pendency of her bankruptcy case plus thirty days (for a total of 131 days). Thus, she concluded that the judgment expired on May 18, 2017.[5]

The only evidence that Ms. Dobos offered in support of her motion was a declaration of her attorney, Andrew Smyth, authenticating copies of the judgment and documents filed in Ms. Dobos' bankruptcy case.

The notice of motion attached to the Motion to Dismiss advised the bail bondsmen that, pursuant to Local Bankruptcy Rule 9013-1, any

---

[5] This may be a mathematical error; 131 days after January 11, 2017 fell on May 22, 2017.

opposition was due fourteen days prior to the hearing. The bail bondsmen did not timely file an opposition to the Motion to Dismiss.

The day before the hearing on the Motion to Dismiss, the bail bondsmen filed an objection to the motion. They argued that the Motion to Dismiss was actually a motion for summary judgment masquerading as a motion to dismiss. They argued that, if it were treated as a motion to dismiss under Civil Rule 12(b)(6), it was untimely, as such motions must be filed before an answer. Similarly, they argued that a defense, including the statute of limitations, not raised in the answer is waived. They also contended that the court should apply issue preclusion, because the court already ruled on the same issues when granting the Motion to Reopen.

The opposition to the Motion to Dismiss did not include Mr. Kassabian's declaration attesting to any fact. Instead, it included a declaration by Michael Kwasigroch, his attorney, which merely attached a copy of the answer.

**D.    The hearing on the Motion to Dismiss and the court's ruling**

At the hearing on the Motion to Dismiss, the bankruptcy court immediately stated that the opposition to the Motion to Dismiss was untimely and that it would not consider it. In addition, the court said that the arguments raised in the opposition concerning summary judgment "border[ed] on being frivolous."

It rejected the bail bondsmen's arguments that the Motion to Dismiss

was really a summary judgment motion. As for the issue preclusion argument, the court stated that reopening the case was a ministerial act.

The court further stated that the bail bondsmen failed to put forth any evidence that notice was improper. As such, it could only consider the evidence presented in the Motion to Dismiss. The court concluded that the Motion to Dismiss established that the Motion to Avoid Lien was properly served.

The court entered an order in Ms. Dobos' favor, granting the Motion to Dismiss. The bail bondsmen timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(1) and (2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court erred dismissing the bail bondsmen's adversary complaint.

## STANDARD OF REVIEW

"We review de novo the [trial] court's grant of a motion to dismiss under [Civil] Rule 12(b)(6), accepting all factual allegations in the complaint as true and construing them in the light most favorable to the nonmoving party." *Narayanan v. British Airways*, 747 F.3d 1125, 1127 (9th Cir. 2014) (citing *Newdow v. Lefevre*, 598 F.3d 638, 642 (9th Cir. 2010)). Similarly, we review de novo the court's entry of judgment on the

9

pleadings. *Rocky Mountain Farmers Union v. Corey*, 913 F.3d 940, 949 (9th Cir. 2019) (citing *Yakima Valley Mem'l Hosp. v. Wash. State Dep't of Health*, 654 F.3d 919, 925 (9th Cir. 2011)). "De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014) (citations omitted).

We may affirm on any basis fairly supported by the record. *Caviata Attached Homes, LLC v. U.S. Bank, N.A. (In re Caviata Attached Homes, LLC)*, 481 B.R. 34, 44 (9th Cir. BAP 2012).

## DISCUSSION

**A.    The bankruptcy court could consider the Motion to Dismiss as a motion for judgment on the pleadings.**

The bail bondsmen argue that the Motion to Dismiss was untimely because it was filed after Ms. Dobos answered the adversary complaint. They contend that the court should have converted the Motion to Dismiss to a motion for summary judgment and that it erred by denying them the opportunity to submit further facts in response to the summary judgment motion, failing to consider the complaint and Mr. Kassabian's declaration, granting Ms. Dobos summary judgment on insufficient evidence, and granting summary judgment by default. All of these arguments are meritless.

It is true that a Civil Rule 12(b)(6) motion "must be made before

10

pleading if a responsive pleading is allowed." Civil Rule 12(b) (made applicable in adversary proceedings by Rule 7012). It is not true, however, that a motion to dismiss filed after the answer must be treated as a summary judgment motion. Rather, the Ninth Circuit has made clear that the court must construe a motion to dismiss filed after an answer as a motion for judgment on the pleadings. *See Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 954 (9th Cir. 2004) (holding that, where "the Defendants filed their motion to dismiss **after** filing their answer . . . the motion should have been treated as a motion for judgment on the pleadings, pursuant to [Civil] Rule 12(c) or 12(h)(2)" (citing *Aldabe v. Aldabe*, 616 F.2d 1089, 1093 (9th Cir. 1980))).

Civil Rule 12(c) provides that, "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." "A [Civil] Rule 12(c) motion follows the same standard as a motion to dismiss. A [Civil] Rule 12(c) motion may thus be predicated on either (1) the lack of a cognizable legal theory, or (2) insufficient facts to support a cognizable legal claim." *Mays v. Wal-Mart Stores, Inc.*, 354 F. Supp. 3d 1136, 1141 (C.D. Cal. 2019) (citation omitted). The court "may consider information contained in materials of which the court may take judicial notice and documents attached to the complaint." *Id.* (citations and internal quotation marks omitted). "It is well-settled that materials properly attached as exhibits to the complaint and matters that are subject

to judicial notice may . . . be considered in evaluating a motion for judgment on the pleadings." *Shame on You Prods., Inc. v. Banks*, 120 F. Supp. 3d 1123, 1144 (C.D. Cal. 2015), *aff'd*, 690 F. App'x 519 (9th Cir. 2017) (quoting *Thomas v. Fin. Recovery Servs.*, No. 5:12-cv-01339-PSG-OP, 2013 WL 387968, *2 (C.D. Cal. Jan. 31, 2013)).

Therefore, the bankruptcy court correctly declined to treat the Motion to Dismiss as a motion for summary judgment.

Construing the motion as a motion for judgment on the pleadings left the bankruptcy court free to consider all of the materials attached to the Motion to Dismiss (with one immaterial exception). The copies of the judgment and papers filed in Ms. Dobos' bankruptcy case were all properly subject to judicial notice. *See Walsh v. Diamond (In re Century City Doctors Hosp., LLC)*, BAP No. CC-09-1235-MkJaD, 2010 WL 6452903, at *6 (9th Cir. BAP Oct. 29, 2010) ("[C]ourt documents filed in an underlying bankruptcy case are subject to judicial notice in related adversary proceedings and district court lawsuits." (citing *O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.)*, 887 F.2d 955, 957-58 (9th Cir. 1989))). The only other attachments were copies of certified mail receipts showing that Ms. Dobos' counsel mailed the Motion to Avoid Lien to the bail bondsmen and their state court counsel at their 2007 addresses. But, as we will explain in the following section, the bail bondsmen's judgment expired before they filed their adversary proceeding, so Ms. Dobos was entitled to prevail even if

12

she failed to give proper notice of the Motion to Avoid Lien (or of the bankruptcy case).

**B.      The bankruptcy court did not err in dismissing the adversary complaint, because the state court judgment had expired.**

Section 523 excludes certain "debt[s]" from the discharge. "'[D]ebt' means liability on a claim," and "'claim' means . . . right to payment . . . ." §§ 101(12), (5). Thus, the existence of a valid claim is a precondition to any action under § 523.

In her Motion to Dismiss, Ms. Dobos argued that she was not indebted to the bail bondsmen any longer because the bail bondsmen had not renewed the judgment that they recovered in 2007. While Ms. Dobos' interpretation of the law and calculation of dates are wrong, we agree with her conclusion that the state court judgment had expired.

Section 683.020 of the California Code of Civil Procedure provides:

Except as otherwise provided by statute, upon the expiration of 10 years after the date of entry of a money judgment or a judgment for possession or sale of property:

    (a) The judgment may not be enforced.

    (b) All enforcement procedures pursuant to the judgment or to a writ or order issued pursuant to the judgment shall cease.

    (c) Any lien created by an enforcement procedure pursuant to the judgment is extinguished.

13

Cal. Civ. Proc. Code § 683.020.[6]

The creditor may renew the judgment for an additional ten years: "[t]he period of enforceability of a money judgment or a judgment for possession or sale of property may be extended by renewal of the judgment as provided in this article." Cal. Civ. Proc. Code § 683.110(a); *see* Cal. Civ. Proc. Code § 683.120(b) ("[T]he filing of the application renews the judgment in the amount determined under Section 683.150 and extends the period of enforceability of the judgment as renewed for a period of 10 years from the date the application is filed.").

Section 108(c) can extend the period in which a creditor may renew a California judgment. *See generally Daff v. Good (In re Swintek)*, 906 F.3d 1100 (9th Cir. 2018) (considering whether § 108(c) extended the time for creditor to renew or execute on prepetition lien); *Spirtos v. Moreno (In re Spirtos)*, 221 F.3d 1079 (9th Cir. 2000) (considering whether § 108(c) extended the time for creditor to renew California state court judgment). That section provides:

---

[6] State law governs the duration of judgments. *See* Civil Rule 69(a) (made applicable in bankruptcy by Rule 7069) ("The procedure on execution [of a money judgment] – and in proceedings supplementary to and in aid of judgment or execution – must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies."); *Romano v. LaVecchia (In re Romano)*, BAP No. NV-08-1139-DHMo, 2008 WL 8462950, at *2-*3 (9th Cir. BAP Oct. 24, 2008) (citing Civil Rule 69(a) and applying state law concerning the expiration of judgments). Because a California state court entered the judgment, we only consider the interplay between California law and bankruptcy law. The analysis under other states' laws may differ.

14

(c) . . . [I]f applicable nonbankruptcy law . . . fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, . . . and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of –

> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

> (2) 30 days after notice of the termination or expiration of the stay under section 362, 922, 1201, or 1301 of this title, as the case may be, with respect to such claim.

This statute requires us to ascertain the dates specified by § 108(c)(1) and § 108(c)(2), and then select the later of those dates.

The relevant date under § 108(c)(1) is the last day for the bail bondsmen to renew their judgment under California law, including any possible extension of that date under state or nonbankruptcy federal law. Pursuant to California Code of Civil Procedure section 683.020, the last day to renew the judgment was January 11, 2017. The parties have not pointed to any federal or state statute that would "suspend" the ten-year period. Thus, the "end of such period" for purposes of § 108(c)(1) was January 11, 2017.

The relevant date under § 108(c)(2) is thirty days after the bail bondsmen had notice of Ms. Dobos' discharge. *See In re Spirtos*, 221 F.3d at 1081-82 ("The period during which [creditor] may renew her judgment

15

does not expire until 30 days after notice of the termination or expiration of the stay in [debtor's] estate."); 2 Collier on Bankruptcy ¶ 108.04[2] (Richard Levin & Henry J. Sommer eds., 16th ed. rev. 2017) ("[T]his extension continues not simply until 30 days after the termination of the stay, but until 30 days after **notice** of that termination."). We do not know the exact date the bail bondsmen had notice of the discharge, but at the outside, they knew of the discharge by September 1, 2015, when they filed the Motion to Reopen. Therefore, the date specified by § 108(c)(2) was October 1, 2015, at the latest.

Thus, the time by which the bail bondsmen could renew their judgment expired on January 11, 2017. Because the bail bondsmen did not renew their judgment by that date, the judgment expired before they filed their adversary complaint. *See Wussler v. Silva (In re Silva)*, 215 B.R. 73, 76 (Bankr. D. Idaho 1997) (calculating § 108(c)'s effect on the time to renew a California judgment in the same fashion as this decision).

Ms. Dobos argues that § 108(c) extended the period for the renewal of the judgment by the duration of her bankruptcy case plus thirty days. This is incorrect. Instead, § 108(c)(2) extends the deadline to thirty days after notice that the automatic stay terminated. *See Smith v. Lachter (In re Smith)*, 352 B.R. 702, 706 (9th Cir. BAP 2006) ("§ 108(c)(1) does not operate without regard to existing nonbankruptcy law to stop the running of any periods of limitation"). Stated differently, § 108(c) does not extend deadlines by a

16

certain amount of time; rather, it extends deadlines to a certain date. But Ms. Dobos' error is immaterial. Although her interpretation of § 108(c) was incorrect, the bail bondsmen's judgment expired under the correct reading of that statute.

The bail bondsmen do not claim that they ever renewed the judgment.[7] They only argue that, "as long as the debt was not barred prior to bankruptcy, state statutes of limitations are ignored in determining dischargeability of a debt." They state that "[t]he renewal of the judgment had not passed when the bankruptcy was filed and so it is alive and well. . . . Further, the renewal of judgment issue was not raised in the answer."

The bail bondsmen are patently mistaken. Their argument implies that, if a judgment debtor seeks bankruptcy protection, a California judgment never expires. They offer no authority for this proposition, and no such authority exists. Section 108(c) delays the expiry of judgments, but only for a fixed period under certain circumstances. *See generally In re Spirtos*, 221 F.3d at 1081-82 (considering § 108(c) and California Code of Civil Procedure section 683.020) .

_____

[7] At oral argument, for the first time, the bail bondsmen questioned Ms. Dobos' calculation of the judgment's expiration date. Their counsel vaguely asserted that the state court judgment expired later in 2017 or "it might have been 2018." However, counsel failed to provide an exact date or explain why Ms. Dobos' calculations were incorrect.

The only authority they cite in support of their position, *Banks v. Gill Distribution Centers, Inc.*, 263 F.3d 862 (9th Cir. 2001), is inapplicable to the present case. There, the Ninth Circuit stated that "[t]he questions before us are whether the state court action was **timely filed**, and whether the filing of that action, **without reducing it to judgment**, was sufficient to establish a debt . . . ." 263 F.3d at 868 (emphases added). Here, there is no question that the state court action was timely filed and that the claim was reduced to judgment.

The bail bondsmen also contend that Ms. Dobos failed to raise the expiration of the judgment in her answer. But Ms. Dobos denied paragraph 12 of the adversary complaint, which contained the bail bondsmen's general allegations concerning the judgment and incorporated Mr. Kassabian's attached declaration that alleged that Ms. Dobos owed him over $100,000. She also raised the "statute of limits" and § 546 as an affirmative defense. This was less than articulate and cited the wrong statute, but the answer as a whole was more than sufficient to inform the bail bondsmen that she contested the timeliness of the action.

Accordingly, because the judgment expired long before the bail bondsmen filed their adversary proceeding, they can no longer enforce the debt. The bankruptcy court did not err in dismissing the adversary

18

complaint.[8]

## C. The bankruptcy court did not decide the timeliness of the adversary complaint when reopening the case.

The bail bondsmen contend that the bankruptcy court approved the timeliness of the adversary complaint by granting the Motion to Reopen. This argument is frivolous.

The bail bondsmen themselves stated, in their Motion to Reopen, that reopening a case has no legal significance. As the bankruptcy court pointed out, the act of reopening a bankruptcy case is ministerial. *See Cusano v. Klein*, 264 F.3d 936, 948 (9th Cir. 2001) ("the mere reopening of a bankruptcy case is a ministerial act that 'lacks independent legal significance and determines nothing with respect to the merits of the case'" (quoting *Menk v. Lapaglia (In re Menk)*, 241 B.R. 896, 913 (9th Cir. BAP 1999))); *Lopez v. Speciality Restaurants Corp. (In re Lopez)*, 283 B.R. 22, 26 (9th Cir. BAP 2002) ("[R]eopening a case is typically ministerial and 'presents only a narrow range of issues: whether further administration appears to be warranted; whether a trustee should be appointed; and whether the circumstances of reopening necessitate payment of another filing fee.'" (quoting *In re Menk*, 241 B.R. at 916-17)). The bankruptcy court did not

---

[8] We need not decide whether (1) Ms. Dobos gave adequate notice to the bail bondsmen of her bankruptcy filing or the Motion to Avoid Lien, or (2) the bail bondsmen's unexplained and unexcused failure to file a timely response to Ms. Dobos' Motion to Dismiss is an independently sufficient basis for the granting of that motion.

make any substantive ruling on any aspect of the bail bondsmen's claims when reopening the case. Accordingly, the decision to reopen the case had no bearing on the order granting the Motion to Dismiss.

## CONCLUSION

The bankruptcy court did not err in dismissing the adversary complaint. Accordingly, we AFFIRM.